```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


   UNITED STATES OF AMERICA,        )
                                    )
           Plaintiff                )
                                    )
           -VS-                     )  Criminal No. 10-10308-PBS
                                    )  Pages 1 - 16
   BRYAN MILEKIS,                   )
                                    )
           Defendant                )
```

**RULE 11 HEARING**

             BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

   ROBERT E. RICHARDSON, ESQ., Assistant United States Attorney, Office of the United States Attorney, 1 Courthouse Way, Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.

   ROBERT J. GALIBOIS, II, ESQ., Law Offices of Robert J. Galibois, II, 414 Country Club Way, Kingston, Massachusetts, 02364, for the Defendant.

```
                              United States District Court
                              1 Courthouse Way, Courtroom 19
                              Boston, Massachusetts  02210
                              April 26, 2011, 2:18 p.m.


               LEE A. MARZILLI
            OFFICIAL COURT REPORTER
          United States District Court
          1 Courthouse Way, Room 7200
             Boston, MA  02210
               (617)345-6787
```

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  Court calls Criminal Action 10-10308,
 3   United States v. Bryan Milekis.  Can you please identify
 4   yourself for the record.
 5            MR. RICHARDSON:  Robert Richardson for the United
 6   States.  Good afternoon, your Honor.
 7            MR. GALIBOIS:  Your Honor, good afternoon.  Rob
 8   Galibois behalf of Mr. Milekis.
 9            THE COURT:  Thank you.  Why are we here today?
10            MR. GALIBOIS:  Judge, my client wishes to enter a
11   change of plea.
12            THE COURT:  All right, Ms. Molloy?
13            THE CLERK:  Yes.  Mr. Milekis, you have previously
14   pled not guilty to armed bank robbery, Counts 1 and 2, all in
15   violation of Title 18 U.S.C. Section 2113(a).  Do you now wish
16   to change your plea?
17            THE DEFENDANT:  Yes.
18            THE CLERK:  And how do you plead to Count 1 and
19   Count 2, guilty or not guilty?
20            THE DEFENDANT:  Guilty.
21            THE CLERK:  Okay, you can take a seat over here with
22   counsel.
23            (Defendant duly sworn.)
24            THE COURT:  Sir, so your lawyer is standing right next
25   to you, and if you have any questions, you can just put your
```

```
 1   hand over the mic and ask him a question.  Do you understand
 2   that?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Just put that right there so we can hear
 5   each other.  Do you understand that you're now under oath, and
 6   if you answer any of my questions falsely, your answers can
 7   later be used against you in another prosecution for perjury or
 8   making a false statement?
 9              THE DEFENDANT:  Yes, your Honor.
10              THE COURT:  What is your full name?
11              THE DEFENDANT:  Bryan Charles Milekis.
12              THE COURT:  And do you go by any nicknames or false
13   names?
14              THE DEFENDANT:  No, your Honor.
15              THE COURT:  How old are you?
16              THE DEFENDANT:  Twenty-four years old.
17              THE COURT:  Where did you grow up?
18              THE DEFENDANT:  Bourne, Cape Cod.
19              THE COURT:  Where did you go to high school?
20              THE DEFENDANT:  Bourne High School.
21              THE COURT:  Did you graduate?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  And did you go on to any kind of college?
24              THE DEFENDANT:  Yes, your Honor.
25              THE COURT:  Where did you go?
```

```
 1              THE DEFENDANT:  I went to Cape Cod Community College.
 2              THE COURT:  So did you read the indictment against
 3   you?
 4              THE DEFENDANT:  Yes, your Honor.
 5              THE COURT:  And do you understand you're pleading
 6   guilty without a plea agreement?
 7              THE DEFENDANT:  Yes, your Honor.
 8              THE COURT:  Have you ever been treated for any mental
 9   illness or addiction to narcotic drugs?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  What have you been treated with?
12              THE DEFENDANT:  Uhm --
13              THE COURT:  Tell me about it.
14              THE DEFENDANT:  I had been to a detox previously for
15   opiates.
16              THE COURT:  All right, and how do you feel today?
17              THE DEFENDANT:  Did you say mental illness or drugs?
18              THE COURT:  Well, I asked both.  Have you ever been
19   treated for any mental illness or addiction to narcotic drugs?
20              THE DEFENDANT:  Not mental illness but narcotic drugs,
21   yes.
22              THE COURT:  And how long ago was your treatment?
23              THE DEFENDANT:  Uhm, over three years.
24              THE COURT:  Do you feel all right today?
25              THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE COURT:  No sort of withdrawal or anything?
 2              THE DEFENDANT:  Oh, no.
 3              THE COURT:  All right.  Are you currently under the
 4   influence of any drugs or medications or alcoholic beverages?
 5              THE DEFENDANT:  No, your Honor.
 6              THE COURT:  Are you taking any legally prescribed
 7   medications?
 8              THE DEFENDANT:  No, your Honor.
 9              THE COURT:  Have you been satisfied with your
10   attorney?
11              THE DEFENDANT:  Yes, your Honor.
12              THE COURT:  Did you go through the indictment with
13   him?
14              THE DEFENDANT:  Yes, your Honor.
15              THE COURT:  Has he pressured you into pleading guilty?
16              THE DEFENDANT:  No, your Honor.
17              THE COURT:  Has anyone made you any promises or
18   threats to get you to plead guilty?
19              THE DEFENDANT:  No, your Honor.
20              THE COURT:  Are you a citizen?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Do you understand this will deprive you of
23   certain important civil rights, like the right to vote, the
24   right to sit on juries, the right to possess firearms, and all
25   sorts of other civil rights?
```

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  So at this point I'm going to ask the
 3    government to state the penalties that could be imposed on
 4    these two counts.
 5              MR. RICHARDSON:  Your Honor, on each of the two counts
 6    of the indictment charging the defendant with armed bank
 7    robbery, the maximum possible penalties are 25 years in prison,
 8    a $250,000 fine, five years of supervised release, and a
 9    mandatory $100 special assessment.
10              THE COURT:  Have you done a tentative preliminary
11    assessment of the Sentencing Guideline range?
12              MR. RICHARDSON:  I'm sure I did at some point, your
13    Honor.
14              THE COURT:  Have you?
15              MR. GALIBOIS:  No, Judge.  We've talked about what he
16    calculated in the past, so I'm trying to recall that number.
17              THE COURT:  Well, because you hear the maximum
18    sentences, and it's good for you to hear what's at least the
19    first cut at what a range might be.
20              MR. RICHARDSON:  Your Honor, this is my first, again,
21    first cut at the Guidelines, and I've got to be candid with
22    both the Court and the defendant:  I am notoriously bad at
23    computing criminal histories.
24              THE COURT:  Well, let me ask you, is he an armed
25    career criminal?
```

```
 1            MR. RICHARDSON:  No, I don't believe he's a career
 2   offender.
 3            THE COURT:  What does his criminal history look like?
 4            MR. GALIBOIS:  He does an issue, Judge.  He in fact
 5   was on probation in Superior Court down in Barnstable at the
 6   time of this particular matter, but by both of our
 7   understandings, he would not qualify as an armed career
 8   criminal.
 9            MR. RICHARDSON:  Right.  I think he had one violent
10   prior felony conviction but not the two that would qualify him
11   for career offender treatment.  So without binding myself, I
12   can tell you my sort of back-of-the-envelope calculation was
13   87 to 108 months after trial or 63 to 78 months on a plea.
14            MR. GALIBOIS:  I thought it was 68, but I remember it
15   being in the 60s.
16            THE COURT:  Well, do you understand that those are not
17   by any means binding or final calculations but that there may
18   be a sentencing range somewhat in that vicinity?
19            THE DEFENDANT:  Yes, your Honor.
20            THE COURT:  All right.  And do you understand that
21   I'll send this to the Probation Department which will calculate
22   a Guideline range, and that you have a right to object to that
23   Guideline range at a subsequent sentencing hearing?  Do you
24   understand that?
25            THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE COURT:  And I'll make rulings on the Guideline
 2   range, and I'll also hear arguments from your attorney and from
 3   the government about any variances or departures from the
 4   Guideline range.  Do you understand that?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  And at the end of the hearing, you may
 7   disagree with my sentence.  You may think I erred as a matter
 8   of law and you can appeal the sentence, but you couldn't at
 9   that point withdraw your guilty plea.  Do you understand that?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  Thank you.  So now I want to go through
12   the very important rights that you give up by pleading guilty.
13   Do you understand you have a right to a jury trial?
14              THE DEFENDANT:  Yes, your Honor.
15              THE COURT:  And do you understand that a jury must be
16   chosen at random from the community?
17              THE DEFENDANT:  Yes, your Honor.
18              THE COURT:  And do you understand that the government
19   must prove beyond a reasonable doubt that you're guilty before
20   you can be convicted?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Do you understand the burden of proof
23   never shifts to you because you have the presumption of
24   innocence?
25              THE DEFENDANT:  Yes, your Honor.
```

1           THE COURT:  Do you understand you wouldn't have to
2    testify against yourself at trial, but you could testify on
3    your own behalf if you wanted to do so?
4           THE DEFENDANT:  Yes, your Honor.
5           THE COURT:  Do you understand you can subpoena
6    witnesses on your own behalf and have witnesses cross-examined
7    by your attorney?
8           THE DEFENDANT:  Yes, your Honor.
9           THE COURT:  Do you understand that?  And understanding
10   all these very important rights, the right to a jury trial, the
11   right to an attorney, the right to force the prosecutor to meet
12   that high burden of proof, do you still want to plead guilty?
13          THE DEFENDANT:  Yes, your Honor.
14          THE COURT:  All right, I'm going to ask the government
15   now to state the evidence, and then I'm going to ask you if you
16   agree with it, all right, so listen.
17          MR. RICHARDSON:  Your Honor, as to Count 1, the
18   evidence at trial would have shown that on Tuesday, June 1,
19   2010, at around 4:20 p.m., a young white male entered the
20   TD Bank located at 2 Market Crossing in Plymouth,
21   Massachusetts.  He approached a teller demanding money and
22   telling her that she had 30 seconds.  He was brandishing what
23   appeared to be a black handgun in his right hand.  The teller
24   handed the robber currency from her drawer which he placed in
25   the plastic bag and then fled the bank.  The bank surveillance

```
 1   video showed that the robber was wearing a gray sweatshirt with
 2   the word "Abercrombie" across the front.  A post-robbery audit
 3   revealed that the robber took $2,705 in U.S. currency, and the
 4   evidence would have shown that the deposits of the TD Bank were
 5   at the time and are now insured by the Federal Deposit
 6   Insurance Corporation.
 7           As to Count 2, the evidence would have shown that
 8   on --
 9           THE COURT:  Why don't we stop for a second.  Do you
10   disagree with anything that he said about the robbery at the
11   TD Bank?
12           THE DEFENDANT:  No, your Honor.
13           MR. RICHARDSON:  As to Count 2 the evidence would have
14   shown that on Friday, June 4, 2010, at around 3:23 p.m., a
15   white male entered the Sovereign Bank located at 715 State
16   Road, Plymouth, Massachusetts.  He approached a teller and
17   brandished what appeared to be a black handgun, stating,
18   "30 seconds, 30 seconds, empty out your drawer."  The robber
19   took a white plastic bag from his pocket and removed the
20   currency that was provided to him by the teller and placed it
21   in this bag.  The robber then moved to a second teller and
22   again demanded money, and the second teller gave him money from
23   her drawer.  A post-robbery audit was conducted and revealed
24   that the individual took $7,330 in U.S. currency.  The deposits
25   of the Sovereign Bank were at the time and are now insured by
```

1  the Federal Deposit Insurance Corporation.
2          And, briefly, the evidence would have shown that after
3  the June 4 robbery, Plymouth Police arrived, and, with the
4  assistance of a tracking dog, were able to follow a trail from
5  the bank onto Wilson Lane in Plymouth.  They canvassed the
6  neighborhood and learned that a neighborhood resident had
7  observed a gray Toyota RAV4 with certain Massachusetts plates.
8  The plate number was put out over the air through a BOLO alert.
9  A state trooper at around --
10         THE COURT:  A what?
11         MR. RICHARDSON:  BOLO, be on the lookout.  That's
12 their acronym.  Sorry.
13         THE COURT:  In all these years, I've never heard that
14 before.
15         MR. RICHARDSON:  Really, really.
16         THE COURT:  Yes.
17         MR. RICHARDSON:  Even from Peggy Cronin.  That's her
18 favorite term.  At around 5:45 p.m., a state trooper saw this
19 vehicle passing through the Bourne rotary.  He waited for
20 backup and then effected a stop of the Toyota when it entered a
21 McDonald's parking lot.  The defendant was in the passenger's
22 seat.  The troopers got him out of the car, frisked him and
23 handcuffed him, and recovered a plastic bag that was semi-
24 transparent and contained a large sum of currency with bank
25 bands around it.

1          During a later search of the defendant's home,
2    the police located a bag that contained, among other things,
3    several Abercrombie sweatshirts and a black flair gun
4    consistent in appearance with the weapon used in both of the
5    robberies.
6          At the police station, the police gave the defendant
7    his Miranda warnings.  He previously had been searched incident
8    to arrest and found to have $385 in his wallet and $1,085 in
9    his pants pocket.  Among other things, he admitted to
10   committing both of the bank robberies.  First, he admitted to
11   committing the robbery earlier that day, indicating that he had
12   used a flair gun, and then when shown photographs from the
13   June 1 robbery, he admitted to committing that robbery as well,
14   and as having worn the same sweatshirt, mask, and gloves that
15   he used in the robbery on June 4.
16          THE COURT:  Do you disagree with anything the
17   government just said?
18          THE DEFENDANT:  No, your Honor.
19          THE COURT:  So did you rob the Sovereign Bank?
20          THE DEFENDANT:  Yes, your Honor.
21          THE COURT:  So now I'm going to read the counts of the
22   indictment.  Do you plead guilty to on or about June 1, 2010,
23   in Plymouth, that you did, by force and violence and
24   intimidation, take from the person and presence of another
25   money in the amount of $2,705 belonging to and in the care,

1  custody, control, management and possession of TD Bank,
2  2 Market Crossing, Plymouth, Mass., the deposits of which were
3  then insured by the Federal Deposit Insurance Corporation, and
4  in committing this offense, that you did assault and put in
5  fear the life of another person by the use of a dangerous
6  weapon -- to wit, a flair gun -- in violation of federal law?
7  Do you plead guilty knowingly, freely, and voluntarily.
8          THE DEFENDANT:  Yes, your Honor.
9          THE COURT:  With respect to Count 2, do you plead
10 guilty in Plymouth that you did by force and violence and by
11 intimidation take from the person and presence of another money
12 in the amount of $7,330 belonging to and in the care, custody,
13 control, management and possession of Sovereign Bank, 715 State
14 Road, Plymouth, Mass., the deposits of which were then insured
15 by the FDIC, and that in committing this offense, you did
16 assault and put in fear the life of another by use of a
17 dangerous weapon, again, a flair gun, in violation of federal
18 law?  Do you plead guilty knowingly, freely, and voluntarily?
19         THE DEFENDANT:  Yes, your Honor.
20         THE COURT:  And with respect to the forfeiture
21 allegations, is that the money?  What is it?
22         MR. RICHARDSON:  Yes, your Honor.  That's basically
23 the cash taken in the course of both of the robberies.
24         THE COURT:  Do you agree to the forfeiture of the
25 moneys taken at the bank?

```
 1                THE DEFENDANT:  Yes, your Honor.
 2                THE COURT:  All right, so --
 3                MR. RICHARDSON:  The only other thing, your Honor, and
 4     this has struck me in terms of the Guidelines, in the interest
 5     of full disclosure, I know in recent cases I've had charging
 6     armed bank robbery, Probation, it's only been a one-point
 7     difference, but rather than count what was done as brandishing
 8     a dangerous weapon, they have counted it as use.  And I'm not
 9     sure what exactly the line of demarcation is, but they may come
10     up with Guidelines somewhat higher.
11                THE COURT:  Right.  You understand that Probation may
12     come up with different guideline ranges.  Is that right?
13                THE DEFENDANT:  Yes, your Honor.
14                THE COURT:  All right, okay.  So knowing all that you
15     know, the rights you give up, the penalties that are possible,
16     do you want to plead guilty to these offenses?
17                THE DEFENDANT:  Yes, your Honor.
18                THE COURT:  I find the plea is knowing and voluntary,
19     supported by an independent basis in fact concerning each of
20     the essential elements for each of the indictments and for the
21     forfeiture, and I accept it.  When would the sentencing be?
22                THE CLERK:  July 11 at 2:30.
23                MR. GALIBOIS:  Yes, please.
24                THE COURT:  Okay, that's fine.  That's fine.  Thank
25     you.  How long do you think you'll need?
```

1           MR. GALIBOIS:  I would ask, Judge, on behalf of
2  Mr. Milekis if we could be allotted 20, 25 minutes.
3           THE COURT:  All right, are there going to be any
4  evidentiary issues?
5           MR. GALIBOIS:  I don't believe so.
6           MR. RICHARDSON:  I don't think so.  I think pretty
7  much all of the facts were in what I recited that would affect
8  the Guidelines.  Again, there's that issue as to how Probation
9  counts that particular issue, but --
10          THE COURT:  What did he do with the gun again, in your
11 view?
12          MR. RICHARDSON:  He had it in his hand.  I would call
13 it as brandishing.  You know, sometimes when they see police
14 reports, I think what they do is, if it's actually pointed at
15 an individual -- and I'm just not clear as to whether that was
16 done in this case -- they call it use as opposed to simply
17 having it and showing it.
18          THE COURT:  Well, that might be a point where there
19 might be some need for evidence?  But who knows?
20          MR. GALIBOIS:  I'll speak to Mr. Richardson before we
21 come back on the 11th to see if that's a disputed fact.
22          THE COURT:  What's at issue here, just so I can get a
23 sense, is this drugs?
24          MR. GALIBOIS:  Oh, very much so, yes, your Honor.
25          THE COURT:  So he committed these robberies --

1           MR. GALIBOIS:  He was on that slippery slope, Judge.
2    There's no question.
3           THE COURT:  All right.  One thing I'd like you to be
4    thoughtful about is, you'll obviously get some significant term
5    of incarceration.  I can't begin to say what it is yet.  But at
6    the back end of it, the bad news is you're here, but we do have
7    resources to help people through a drug program problem.  In
8    particular, we have a drug court called the CARE program.  We
9    have resources.  They're only as good as what you're willing to
10   put into it, but I want you to think about it because they have
11   to be voluntary, all right?  All right, thank you.
12          MR. RICHARDSON:  Thank you, your Honor.
13          THE CLERK:  All rise.
14          (Adjourned, 2:34 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

      I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 16 inclusive, was recorded by me stenographically at the time and place aforesaid in Criminal No. 10-10308-PBS, United States of America v. Bryan Milekis, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

      Dated this 21st day of December, 2016.


/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER